UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

MYESHIA REID,

    Plaintiff,

    v.

PRINCE GEORGE'S COUNTY BOARD OF
EDUCATION, *et al.*,

    Defendants.

Civil Action No. TDC-14-0600

**MEMORANDUM OPINION**

This is a civil rights and state tort action filed by Myeshia Reid against the Prince George's County Board of Education ("Board") and three of its employees: Jane Spence, Principal of Bowie High School; Mary Williams, a school bus driver; and Kimberly Boone, a school bus aide. Before the Court is Defendants' Motion to Dismiss, ECF No. 13, in which Defendants assert that Reid's claims are time-barred, that Reid failed to exhaust her administrative remedies, and that Reid lacks the capacity to bring this suit on her own behalf. For the reasons set forth below, Defendants' Motion to Dismiss is denied.

**BACKGROUND**

In 2006, Reid, then a minor, was diagnosed with Post-Traumatic Stress Disorder ("PTSD"), Attention Deficit Hyperactivity Disorder ("ADHD"), and Emotional Disturbance ("ED"), the consequences of a childhood marred by "prolonged abuse and neglect." Compl. ¶ 1. These conditions were "well documented" in Reid's school records. *Id.* As a result of her conditions, Reid had "volatile" emotional and physical outbursts when agitated. *Id.* ¶ 2. Between 2006 and 2008, while attending Eisenhower Middle School, Reid had multiple such

outbursts. *Id.* Reid would "reach an emotionally fevered pitch, bang her head against walls, and throw herself about." *Id.* As a result of these incidents, Eisenhower staff recommended that Reid be placed in "highly structured and controlled environments." *Id.*

In the fall of 2008, Reid entered high school, but "bounc[ed]" from school to school because of her behavioral difficulties. *Id.* ¶ 3. At times, Reid's outbursts were so severe that school officials called in the Sheriff's Office to help contain and calm her. *Id.* In May 2009, while Reid was enrolled at Duvall High School, a school psychologist confirmed the prior PTSD, ADHD, and ED diagnoses. *Id.* Based on that evaluation and Reid's continued difficulties, the Board decided to transfer Reid to Bowie High School ("BHS") for 10th grade. *Id.* ¶ 4. BHS was better equipped to provide Reid the more structured environment that she required. *Id.* Because BHS was several miles from Reid's home, the Board would also provide Reid daily bus transportation. *Id.*

Reid began attending BHS in August 2009, taking the bus to and from school. *Id.* ¶ 5. On those rides, the bus was staffed with a driver and an aide. *Id.* ¶ 6. During the ride, Reid was not restrained—such as with a harness or seat belt—in any way. *Id.* ¶ 8. Once at school, Reid received a "host of special education services;" however, she continued to have "uncontrollable physical outbursts" when agitated. *Id.* ¶ 5. At some point between August 2009 and February 2011, Reid had such an episode while on the bus, which culminated with her making an unsuccessful attempt to get off the bus while it was still in motion. *Id.* ¶¶ 7, 12.

On the morning of March 1, 2011, Reid boarded the school bus in an "agitated and volatile" state. *Id.* ¶ 9. Both Williams and Boone were on the bus, with Williams behind the wheel and Boone working as the assigned aide. *Id.* ¶ 10. Boone knew of Reid's behavioral difficulties, including that Reid had previously tried to exit a moving bus. *Id.* ¶ 12. Despite this

knowledge and Reid's demeanor that morning, neither Boone nor Williams attempted to calm Reid down before resuming the bus route. *Id.* ¶ 10. With the bus underway, Reid demanded to be let off. *Id.* ¶ 9. Williams "ignor[ed]" Reid's request and continued on the route. *Id.* ¶ 10. Reid then attempted to exit the bus through its front door, prompting Boone to try to restrain her. *Id.* ¶ 11. Unable to get Reid under control, and with the bus still moving, Boone asked "another disabled student" on the bus to help her restrain Reid. *Id.* Boone and the student struggled with Reid, but she eluded them and darted to the back of the bus. *Id.* Once there, she opened the rear emergency door and leapt out, with the bus still in motion. *Id.* Reid hit the ground head first. *Id.* Williams stopped the bus, and she and Boone summoned emergency services. *Id.* ¶ 13. At some point, Boone noted that Reid had "done this once before," and remarked that Reid was "crazy." *Id.* ¶ 12.

When the emergency medical technicians arrived, Reid was unconscious and bleeding from her mouth and ears. *Id.* ¶ 13. She was transported to Doctor's Hospital where a CT scan revealed that she had substantial skull and brain injuries: multiple skull fractures, bleeding between the brain and its surrounding tissue, and a dangerous increase in her brain's water content. *Id.* The pressure exerted on the brain as a result of these fluids caused her brain to shift four millimeters past its normal position, a shift that indicated "a distortion of the brain stem." *Id.* Reid remained in a coma for 30 days. *Id.* ¶ 14. When she regained consciousness, she was transferred to the Kennedy Krieger Institute, where she began an "intensive," six-month program of rehabilitation. *Id.* ¶ 14-15. Based on Reid's performance and progress during that rehabilitation, her doctors concluded that Reid had suffered "permanent and life altering injuries" from the incident. *Id.* In particular, Reid's brain has been permanently damaged. Her IQ has

dropped from 91 pre-injury to 54 post-injury, she cannot read or write, and she will likely be unable ever to care for herself without assistance. *Id.* ¶¶ 15-16.

On February 28, 2014, Reid filed suit against Defendants in this Court. ECF No. 1. In her complaint, she alleges that Defendants knew or should have known of Reid's particular behavioral difficulties and yet failed to take any precautions to ensure her safety on her bus ride to and from school. She asserts that this alleged failure violated her rights under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (2012) ("Section 1983"); the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.* (2012); Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §§ 794 *et seq.* (2012); and Article 24 of the Maryland Declaration of Rights ("Article 24"). She further asserts that this alleged failure constituted negligence on the part of all Defendants. Finally, she contends that the Board and Defendant Spence, who is the Principal of Bowie High School, were negligent in hiring, retaining, and supervising Boone and Williams.

On April 23, 2014, Defendants filed a Motion to Dismiss. ECF No. 13. In the Motion, Defendants argue that this Court lacks subject matter jurisdiction over this case because (1) Reid's claims are time-barred by the statute of limitations; and (2) Reid failed to exhaust her administrative remedies. Defendants also seek dismissal on the ground that Reid lacks the capacity to maintain this lawsuit. On May 26, 2014, Reid filed an Opposition to the Motion. ECF Nos. 18, 19. On June 9, 2014, Defendants filed a Reply Memorandum. ECF No. 21.[1]

---

[1] On June 18, 2014, Reid filed a Motion for Leave to File a Sur-Reply, which Defendants opposed on June 27, 2014. ECF Nos. 22, 23. That Motion will be DISMISSED AS MOOT.

## DISCUSSION

### I. Legal Standards

In their Motion, Defendants seek dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) (subject matter jurisdiction) and 12(b)(6) (failure to state a claim). Although Defendants appear to claim that this Court lacks subject matter jurisdiction because Reid's claims are time-barred, *see* Mot. Dismiss at 7 (citing Fed. R. Civ. P. 12(b)(1)), the statute of limitations is an affirmative defense, not a jurisdictional prerequisite, so such a challenge to a complaint is made pursuant to Rule 12(b)(6), not 12(b)(1). *United States v. Kivanc*, 714 F.3d 782, 789 (4th Cir. 2013); *see Jones v. Bock*, 549 U.S. 199, 215 (2007) (holding that if the allegations in a complaint "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim").

Defendants also invoke Rule 12(b)(1) in claiming that Reid's alleged failure to exhaust administrative remedies before filing suit strips this Court of subject matter jurisdiction. Mot. Dismiss at 6. Whether a failure to exhaust administrative remedies would establish a lack of subject matter jurisdiction under Rule 12(b)(1) or a failure to state a claim under Rule 12(b)(6) has not been definitively established. The Supreme Court has noted that "[o]n the subject-matter jurisdiction/ingredient-of-claim-for-relief dichotomy, this Court and others have been less than meticulous," *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 511 (2006), and has "cautioned . . . against profligate use of the term . . . 'jurisdictional.'" *Union Pacific Railroad Co. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 82 (2009). The Fourth Circuit has reached different conclusions depending on the specific administrative remedy that was not exhausted. *Compare Davis v. N.C. Dep't of Corrections*, 48 F.3d 134, 140 (4th Cir. 1995) (holding that in a Title VII employment discrimination case, securing an entitlement to a right to sue letter is a

jurisdictional requirement) *with Edelman v. Lynchburg College*, 300 F.3d 400, 404 (4th Cir. 2002) (finding in a Title VII case that failure to exhaust the requirement to file a claim with the EEOC within the prescribed time limit was not a jurisdictional requirement). In this instance, however, because Defendants' claim relating to exhaustion of administrative remedies is a "facial challenge" to subject matter jurisdiction in that they contend that the Complaint fails to allege facts giving rise to subject matter jurisdiction, Reid "is afforded the same procedural protection as [s]he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 698 F.2d 1213, 1219 (4th Cir. 1982)). Thus, the Court need not determine whether Defendants' claim relating to exhaustion of administrative remedies is a valid challenge to subject matter jurisdiction, because the standard of review is the same whether that challenge is deemed a motion to dismiss under Rule 12(b)(1) or Rule 12(b)(6).

Defendants' final claim is that Reid, because of her brain injuries, lacks the capacity to file suit. Such a challenge is properly construed as motion to dismiss for failure to state a claim, and therefore is subject to the Rule 12(b)(6) standard of review. *Johnson v. Helicopter & Airplane Services Corp.*, 389 F. Supp. 509, 517 (D. Md. 1974) ("The defense of lack of capacity … is properly brought as a 12(b)(6) motion.").

Thus, all of Defendants' bases for dismissal are governed by the standard of review for a Rule 12(b)(6) motion. "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground[.]" *Jones*, 549 U.S. at 215. In making this determination, the Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*,

510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## II.   Statute of Limitations

In their Motion to Dismiss, Defendants explain, and Reid does not dispute, that all of Reid's claims are subject to a three-year statute of limitations. Accordingly, because the events at issue occurred on March 1, 2011, Reid had until February 28, 2014 to file her Complaint. Defendants, relying on the CM/ECF document headers, assert that Reid missed this deadline by filing her Complaint on March 4, 2014. *See* Rep. at 4. However, in their Reply, Defendants concede that a more thorough inspection of the docket reveals that Reid filed her Complaint on February 28, 2014, and therefore that her filing was timely. Rep. at 4. Defendant's Motion to Dismiss on this ground is thus denied.

## III.   Exhaustion of Administrative Remedies

Defendants argue that Reid was required, but failed, to exhaust all available administrative remedies before filing suit. To make this argument, they characterize Reid's case as one brought under the Individuals with Disabilities Education Act ("IDEA") 20 U.S.C. §§ 1400 *et seq.* (2012). Under the IDEA, states that accept federal funds must provide a "free appropriate public education" ("FAPE") to students with disabilities. § 1412(a)(1). To ensure that a qualifying student receives a FAPE, a school is required to create and adhere to an individualized education plan ("IEP") developed specifically for that student. §§ 1401(9), 1414(d). A student may challenge the sufficiency or implementation of the IEP through the administrative measures provided for in the statute, and must exhaust those administrative remedies before filing a civil action seeking relief available under the IDEA, including one asserting violations of the Constitution, the ADA, or Section 504. § 1415(l). However, a

plaintiff is exempt from this exhaustion requirement if "the administrative process would have been futile." *MM ex rel. DM v. School Dist. Of Greenville Cnty.*, 303 F.3d 523, 536 (4th Cir. 2002).

Here, Defendants argue that "the gravamen of Plaintiff's Complaint" is that she is "unsatisfied with the accommodations provided for her education"—specifically, the transportation to and from BHS—and therefore that she was required to pursue that grievance through the IDEA's administrative process. Mot. at 10. Such administrative remedies, they conclude, "'oriented as they are to providing prospective educational benefits,' could have addressed Plaintiff's education-related transportation concerns." *Id.* at 10-11 (citing *Padilla ex rel. Padilla v. School Dist. No. 1 in City and Cnty of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000)). In response, Reid emphasizes that she "*has not* brought a cause of action under the [IDEA]" and does not seek "any injunctive, prospective relief available under the IDEA." Resp. at 5 (emphasis in original). Instead, she seeks relief that the IDEA cannot provide: "monetary damages for past and current physical injuries" caused by Defendants' allegedly "discriminatory acts." *Id.* (internal quotation marks omitted). Reid thus concludes that she was not required to exhaust IDEA administrative remedies before filing suit. *Id.* at 6.

Reid has the better argument. The IDEA imposes an exhaustion requirement only if the relief a plaintiff seeks through her non-IDEA cause of action is "relief that is also available under" the IDEA. § 1415(l). Generally, compensatory damages are not available under the IDEA. *Sellers by Sellers v. School Bd. Of City of Manassas, Va.*, 141 F.3d 524, 528 (4th Cir. 1998). Rather, Defendants themselves note that the principal form of relief under the IDEA is *prospective* benefits, in the form of educational accommodations. *See* Mot. at 10. The administrative procedures laid out in the IDEA thus chiefly enable parents to be "involve[d] in

8

decisions about their disabled child's education," not to litigate a dispute about past events. *Sellers*, 141 F.3d at 527  As the Second Circuit usefully explained, "The IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area" and to allow for the exercise of "educational expertise by state and local agencies" and the "full exploration of technical educational issues." *Polera v. Board of Educ. of the Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 487 (2d Cir. 2002) (internal quotation marks and citation omitted).  Insofar as a plaintiff's complaint involves issues outside or beyond the ken of such administrators—issues not related to how to meet the educational needs of the particular student—the exhaustion requirement serves no purpose.

That is the situation here.  Although Reid's claim in the Complaint relates somewhat to the IDEA in that the bus transportation was part of the accommodations provided in her IEP, the harm that Reid alleges is not educational in nature, and the relief that Reid seeks is not relief available under the IDEA.  Reid seeks monetary compensation for profound physical injuries, not accommodations to support her future education.  The inclusion of a claim for monetary damages may not, in and of itself, render exhaustion futile. *See, e.g., Polera*, 288 F.3d at 486. However, courts have found that exhaustion of IDEA administrative remedies was futile in cases alleging injuries to a disabled student while the student was in the custody of school officials, where the plaintiff sought only monetary damages as compensation for the injuries, not further educational assistance from the school district.

In *Padilla ex rel. Padilla v. School District No. 1 in the City and County of Denver, Colorado*, 233 F.3d 1268 (10th Cir. 2000), for example, where a student who was restrained in a stroller and confined without supervision within a windowless closet suffered a skull fracture and

other physical injuries when the stroller tipped over, the Tenth Circuit found that exhaustion of IDEA administrative remedies was not required before the student could sue for damages. *Id.* at 1274 ("[W]e fail to see how the IDEA's administrative remedies, oriented as they are to providing prospective educational benefits, could possibly begin to assuage Reid's severe physical, and completely non-educational, injuries.").

In another case, the Ninth Circuit found that exhaustion would be futile where a student suing over physical abuse by school personnel sought only monetary damages and no educational accommodations. *Witte v. Clark County Sch. Dist,* 197 F.3d 1271, 1276 (9th Cir. 1999) ("The remedies available under the IDEA would not appear to be well suited to addressing past physical injuries adequately; such injuries typically are remedied through an award of monetary damages."), *overruled on other grounds, Payne v. Peninsula Sch. Dist.,* 653 F.3d 863, 867 (9th Cir. 2011). In *Covington v. Knox County School System,* 205 F.3d 912, 917-18 (6th Cir. 2000), the Sixth Circuit held that exhaustion would be futile in a case where a student was abusively confined to a locked "vault-like" room for several hours at a time as punishment, because the student had already graduated from school and sought no educational remedies, the injuries were "wholly in the past," and monetary damages were "the only remedy that c[ould] make him whole." *Id.* at 917-18.

Likewise, in *McCormick v. Waukegan School District No. 60,* 374 F.3d 564 (7th Cir. 2004), the Seventh Circuit did not require exhaustion of administrative remedies from a student suffering from a "rare form of muscular dystrophy" who was seeking compensation for permanent physical injuries caused when his physical education instructor forced him to engage in vigorous exercise in contravention of limitations contained in his IEP. *Id.* at 569. The court

explained that exhaustion was futile because "[t]he nature of [the student's] claim is not educational; no change to his IEP could remedy, even in part, the damage done to [his] body."[2]

Under the facts of this case, where Reid is no longer in the school system and the only remedy she seeks—monetary compensation for permanent physical injuries—is something that the IDEA simply cannot provide, requiring Reid to use, much less exhaust, the IDEA administrative procedures would be an exercise in futility. *See Polera*, 288 F.3d at 490 (noting that exhaustion would be futile if even with immediate filing of an administrative action after the incident, "[n]othing could 'undo' the harm" such that "damages would have been the only adequate remedy"). Because the law does not require this futile act, *MM ex rel. DM*, 303 F.3d at 536, Defendant's Motion to Dismiss on this ground is denied.

## IV.  Capacity to Sue

In their Motion to Dismiss, Defendants, relying on the description of Reid's injuries set forth in the Complaint, question whether Reid is competent to pursue this lawsuit on her own behalf and accordingly encourage the Court to consider appointing a guardian *ad litem* under Federal Rule of Civil Procedure 17(c). *See* Mot. at 15-17. In their Response to that motion, Reid's counsel raise no objection to the appointment of a guardian *ad litem* and suggest that Reid's sister fill the role. Resp. at 9-10. Despite this apparent agreement, Defendants, in their Reply, go much further, asking this Court to "require Reid to indicate who, if anyone, can

---

[2] In *McCormick*, the Seventh Circuit emphasized that IDEA administrative remedies are particularly unsuited to the amelioration of physical injuries because the IDEA "does not provide medical services." 374 F.3d at 567. The court thereby distinguished *McCormick* from its earlier decision in *Charlie F. v. Board of Education of Skokie School District 68*, 98 F.3d 989 (7th Cir. 1996). In *Charlie F.*, the Court held the exhaustion requirement applicable to a damages action alleging verbal humiliation of a disabled student, because the complaint dealt with acts that had "an educational source and an adverse educational consequence"; the student remained in the school system; and some alleged bases for damages, such as the need for counseling, arguably could have been provided by the school district as part of an ongoing individualized educational plan. *Id.* at 993.

11

provide oral testimony regarding the transportation services provided, the nature of the incident that transpired ..., and the injuries suffered." Rep. at 10. If Reid is unable to produce such a witness, Defendants assert, then her case should be "dismissed in its entirety." *Id.*

Defendants' invitation to dismiss Reid's case must be rejected. Unsurprisingly, Defendants cite no case law supporting their belated contention that Reid's case must be dismissed. It would be perverse to dismiss a case only because a plaintiff is too badly injured to give competent testimony. Defendants' suggestion that this Court do just that is particularly untoward considering that there are a number of other witnesses, including Defendant Williams, Defendant Boone, and other students who were on the bus, who presumably can testify about the events at issue. Defendants are hardly left insurmountably "prejudiced" by Reid's potential inability to provide her own account of the events. Rep. at 10. Defendant's Motion to Dismiss on this ground is therefore denied.

The proper course of action is instead what Defendants originally proposed and what is contemplated by Federal Rules of Civil Procedure 17(c) and 25(b): this Court should determine whether Reid needs someone to prosecute this case on her behalf and, if so, appoint an appropriate representative. The Court will undertake this task at a hearing to be scheduled.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is denied. A separate Order follows.

Date: October 8, 2014

THEODORE D. CHUANG
United States District Judge